Lori M. Bemis, WSBA #32921
McGAVICK GRAVES, P.S.
1102 Broadway, Suite 500
Tacoma, WA 98402
(253)627-1181 | (253) 627-2247
lmb@mcgavick.com

Robert V. Cornish, Jr. (PHV)
LAW OFFICES OF ROBERT V. CORNISH, JR., PC
680 South Cache Street, Suite 100
Jackson, WY 83001
(307)264-0535 | (571) 290-6052
rcornish@rcornishlaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| ZHENG JIN, SUHAO ZHANG, JUNLING ZHANG, and GUIYAN LI, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>  v.<br><br>MIN ZHANG CHRIST, an individual, and YMG GLOBAL IMMIGRATION CONSULTING GROUP CO. LTD., a foreign company formed under the laws of Hong Kong,<br><br>           Defendants. | Case No. 2:25-cv-00754-RAJ<br><br>**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT YMG GLOBAL IMMIGRATION CONSULTING GROUP CO. LTD.**<br><br>**NOTE ON MOTION DOCKET: NOVEMBER 5, 2025** |

MOTION FOR DEFAULT JUDGMENT        -1-     Law Offices of Robert V. Cornish, Jr., PC
Case No. 2:25-cv-00754-RAJ           680 South Cache Street, Suite 100, PO Box 12200
                                         Jackson, WY 83001
                                       Tel: (307) 264-0535

## I.    INTRODUCTION

Plaintiffs Zheng Jin, Suhao Zhang, Junling Zhang, and Guiyan Li ("Plaintiffs"), by and through counsel, respectfully move this Court for entry of default judgment against Defendant YMG Global Immigration Consulting Group Co. Ltd. ("YMG").

## II.    STATEMENT OF FACTS

Plaintiffs filed their Class Action Complaint for Equitable Relief and Damages ("Complaint") on April 24, 2025. ECF No. 1. The Complaint asserts claims against YMG for (1) declaratory relief; (2) securities fraud; (3) aiding and abetting breaches of fiduciary duties; (4) breach of the covenant of good faith and fair dealing; and (5) violation of the Consumer Protection Act. The Summons was electronically issued as to YMG on April 28, 2025. ECF No. 4.

Plaintiffs served the Complaint, its accompanying exhibits, and Summons on YMG on May 20, 2025. *See* ECF No. 5. YMG failed to respond by June 10, 2025, its deadline to respond or otherwise answer the Complaint pursuant to Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Plaintiffs subsequently requested that the Clerk of the above-entitled Court enter default against YMG, which was granted. ECF Nos. 6 and 10.

## III.    LEGAL STANDARD

Once default is entered, the Court may grant default judgment. Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors in deciding whether to grant a motion for default judgment (the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72 (citation omitted).

Under Rule 55(b), the Court may enter default judgment following the Clerk's entry of default. On default, the well-pleaded factual allegations (except as to damages) are accepted as

true. *See*, *e.g.*, *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977). Damages must be proven by competent evidence, which may include declarations and documentary proof. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Detailed findings of fact are not required. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

## IV.    <u>LEGAL ARGUMENT</u>

Here, all of the *Eitel* factors weigh in favor of Plaintiffs and default judgment:

1.    Prejudice to Plaintiffs. Without judgment, Plaintiffs have no remedy for the millions in losses caused by YMG's fraudulent scheme.

2.    Merits of claims. The Complaint pleads securities fraud, aiding and abetting breaches of fiduciary duties, breach of the covenant of good faith and fair dealing, and violation of the Consumer Protection Act with particularity and factual bases.

3.    Sufficiency of the Complaint. The Complaint provides adequate notice as to the facts, grounds of jurisdiction, Plaintiffs' entitlement to relief, and the relief sought. Each claim is well-pleaded and supported by undisputed evidence.

4.    Sum at stake. Plaintiffs invested at least $550,000 each; damages are proportionate and tied to statutory remedies.

5.    No dispute of material facts. YMG has failed to appear or defend the action.

6.    No excusable neglect. Service was proper, YMG has simply ignored this case.

7.    Policy favoring decisions on the merits. Default is proper when a defendant refuses to litigate. The policy of disfavoring default judgments is outweighed by YMG's outright refusal to appear or otherwise defend this action.

Accordingly, and as briefed more fully below, default judgment is proper and warranted for each cause of action against YMG.

**A.    Securities Fraud**

**1.    Federal law (Section 10(b), Rule 10b-5)**

Plaintiffs allege YMG misrepresented the nature, safety, and use of EB-5 funds. Securities fraud claims are actionable on default where the complaint pleads the (1) material

misrepresentation or omission, (2) in connection with the purchase of a sale or security, (3) with scienter, (4) in interstate commerce. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010) (elements of Rule 10b-5 claim); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (materiality assessed by the "total mix" of information available).

Defendants (including YMG) used the mails, *i.e.*, interstate commerce, to disseminate offering documents and a private placement memorandum ("PPM") containing material misstatements and omissions about the Southport EB-5 Project (*e.g.*, that construction financing was "well funded" and there was a "59% Job Cushion" and that investors would receive 3.5% interest and a full refund of $500,000 after five years), while concealing a later borrower switch and mezzanine and subordination structure that materially increased risk and precluded repayment to Plaintiffs and other foreign investors.

Plaintiffs allege they relied on these statements and would not have invested but for the misrepresentations; their out-of-pocket losses (each $550,000) flow directly from the fraud— satisfying reliance and loss causation. The PPM and offering documents omitted that a mezzanine financing scheme would be or was already in place, with lenders who would occupy a repayment priority before Plaintiffs and other foreign investors, which eviscerated the very purpose and reason for Plaintiffs and other foreign investors to provide the significant investments. *See Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006, 1014-15 (9th Cir. 2005).

YMG provided several documents to Plaintiffs which were false or misleading, concealed the true nature of the scheme surrounding the loans made by Plaintiffs, and engaged in activity to cover up the fraudulent activity after it occurred.

YMG assisted in marketing the fraudulent investment scheme, finding foreign investors interested in the EB-5 Program. The EB-5 Program's purpose is to enable immigrants to secure permanent residence in the United States in exchange for investing at least $500,000 (now $1,050,000) in a commercial enterprise that uses the investment to create or preserve at least 10 American jobs. YMG coaxed foreign investors, such as Plaintiffs, into investing, or loaning, the required $500,000 along with a $50,000 administration fee into the Southport Project through its misrepresentations that the project was well funded and had an ample job cushion, and by

misrepresenting total costs of the overall project, tenancy projections, and completion timeline, notwithstanding COVID-19 and its impacts.

A special purpose vehicle ("SPV") entity was formed which took in loan money from the immigrant investors, including Plaintiffs, and in turn loaned money to the Southport Project. The Plaintiffs and the other immigrant investors purchased equity in the SPV under the misrepresentation from YMG that repayment of the loan to the SPV would retire the debt and thus cause their equity to be redeemed. This is a common transaction practice in EB-5 investments. Through the fraud perpetrated by YMG and the other defendants, Plaintiffs have suffered a complete loss of the $550,000 they each invested.

**2.      Washington law (Ch. 21.20 RCW)**

The Securities Act of Washington ("SAW") prohibits selling a security by means of an untrue statement of material fact or omission of a material fact necessary to make statements not misleading. RCW 21.20.010. It provides a purchaser remedy of rescission or damages with 8% statutory interest from the date of payment, plus costs and reasonable attorney's fees. RCW 21.20.430(1). The SAW is remedial and construed broadly to protect investors. *See Hines v. Data Line Sys.*, 114 Wn.2d 127, 134-36, 787 P.2d 8 (1990); *Go2Net, Inc. v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 252–54, 143 P.3d 590 (2006).

YMG, nor any other Defendant, ever filed anything with the Washington Securities Division to lawfully offer any securities. The Complaint alleges material misstatements in the PPM/Offering Documents and ongoing concealment (including the plan to subordinate the EB-5 loan via mezzanine debt and to replace the borrower), and pleads use of the mails/interstate commerce—squarely fitting RCW 21.20.010.

The Complaint alleges multiple material misstatements and omissions in connection with the sale of limited partnership interests, Defendants' misuse of investor funds, and investors' resulting losses. Those uncontested allegations satisfy the federal and state elements and warrant judgment and statutory remedies under RCW 21.20.430(1).

Here, YMG's material misrepresentations and omissions proximately caused Plaintiffs' injuries and loss because Plaintiffs would not have invested in the Project but for the material

misrepresentations and omissions. Their losses of all of the money they invested—which is not susceptible to changed economic circumstances, changed investor expectations, new industry- or firm-specific facts, conditions, or other events—are wholly attributable to YMG's misrepresentations and omissions. They are entitled to their out-of-pocket losses. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-343 (2005).

**B.    Aiding and Abetting Breach of Fiduciary Duty**

Courts recognize aiding-and-abetting liability under Restatement (Second) of Torts § 876(b), requiring: (1) a primary breach of fiduciary duty; (2) the aider and abettor's knowledge of the breach; and (3) substantial assistance or encouragement. *See Calvert v. Zions Bancorporation (In re Consol. Meridian Funds)*, 485 B.R. 604, 616 (Bankr. W.D. Wash. 2013); *see also Martin v. Abbott Labs.*, 102 Wn.2d 581, 596, 689 P.2d 368 (1984). The default-admitted allegations show that non-fiduciary actors knowingly facilitated fiduciary breaches by assisting in the diversion and misuse of investor funds. Liability accordingly follows.

Despite the Defendants filing to claim Regulation D exemptions, no commissions are disclosed, nor was the mezzanine financing structure disclosed to Plaintiffs that their investments would be subordinated to other lenders with priority rights; nor were state filings made although a Rule 506(c) exemption was sought. YMG was part of the scheme to defraud Plaintiffs and knew about the Defendants' plans to bilk millions of dollars from unwitting investors. In fact, it was YMG who served as the conduit to connect the investors to the fraudulent scheme. YMG was not a passive actor, but a willing participant.

The Complaint pleads a primary breach by Defendant Min Zhang Christ (unlicensed sales, self-dealing, unilateral changes to offering terms, concealment of encumbrances that led to foreclosure), and that YMG—engaged to market and sell to investors—knowingly and significantly aided those breaches by acting as the conduit to investors while the borrower was switched and the EB-5 loan subordinated via mezzanine financing. These facts sufficiently support knowledge and substantial assistance.

**C.    Breach of the Covenant of Good Faith and Fair Dealing**

Every Washington contract carries an implied duty of good faith and fair dealing requiring

parties to cooperate, so that each obtains the full benefit of the bargain; the duty does not add terms or rewrite the contract. *See Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569-70, 807 P.2d 356 (1991); *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112-13, 323 P.3d 1036 (2014).  The alleged facts show YMG frustrated Plaintiffs' contractual rights and failed to deal fairly and in good faith, instead securing a mezzanine financing scheme—establishing breach and resulting damages.

Plaintiffs invested $500,000 plus $50,000 for limited-partnership interests in an SPV that would loan to the Southport Project; the PPM promised 3.5% and repayment in five years, with redemption upon loan repayment—the core benefit of the bargain.  Defendants then unilaterally changed the borrower and implemented a mezzanine structure that subordinated investors, frustrating the contract's expected performance and depriving Plaintiffs of the bargained-for repayment pathway—thus breaching the implied covenant of good faith and fair dealing.

**D.    Consumer Protection Act (Ch. 19.86 RCW)**

A claim under the Consumer Protection Act ("CPA") requires five distinct elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to business or property; and (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).  The CPA is to be "liberally construed that its beneficial purposes may be served." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009).  The uncontested allegations that Defendants deceptively marketed and sold investments, misrepresented material facts, and caused pecuniary loss to multiple consumers satisfy these elements and warrant CPA relief, including attorney's fees and potential treble damages.  *See Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 84, 170 P.3d 10 (2007).

YMG solicited investments and disseminated offering documents with deceptive statements (including about financing and job cushion), and continued public-facing assurances to lull investors—conduct in trade or commerce that impacts the public interest. Plaintiffs suffered pecuniary injury (each $550,000 plus fees) and pleaded but-for causation. Without YMG's

deceptive practices, Plaintiffs would not have invested in the Southport EB-5 Project. They are entitled to actual damages, trebled, and attorney fees and costs.

### V.    RELIEF REQUESTED

Plaintiffs request judgment against YMG as follows:

1.    Awarding compensatory damages in the amount of $550,000 per Plaintiff plus interest for YMG's fraud in connection with the EB-5 Program;

2.    Awarding compensatory damages in the amount of $550,000 per Plaintiff plus interest for YMG's aiding and abetting of breaches of fiduciary duties;

3.    Awarding compensatory damages in the amount of $550,000 per Plaintiff plus interest for YMG's breaches of the covenant of good faith and fair dealing;

4.    Awarding treble damages for unfair or deceptive acts or practices in the conduct of trade or commerce under RCW 19.86.090;

5.    Attorney's fees and costs, in an amount to be supported by separate declaration;

6.    Pre- and post-judgment interest at the maximum rate allowed by law; and

7.    Any further relief the Court deems just.

### VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request entry of default judgment against Defendant YMG Global Immigration Consulting Group Co. Ltd.

Dated: November 5, 2025                LAW OFFICES OF ROBERT V. CORNISH, JR., P.C.


By: */s/ Robert V. Cornish, Jr.*
ROBERT V. CORNISH, JR.

*Attorneys for Plaintiffs*